50,2010 CP004134XXXXSB

# LAST WILL AND TESTAMENT

## OF

## ERIC F. ROSS

I, ERIC F. ROSS, of 200 South Ocean Boulevard, City of Palm Beach, County of Palm Beach and State of Florida, hereby declare this to be my Last Will and Testament, hereby revoking any and all other Wills and Codicils that I previously may have executed.

### ARTICLE 1
### IDENTIFICATION OF FAMILY AND DESIGNATION OF FIDUCIARIES.

The provisions set forth below shall apply in connection with the administration of my estate and the construction of this Will.

1.01   I declare that I was previously married to LORE ROSS, who predeceased me on February 28, 2009. I have three (3) children of this marriage, whose names are: BARBARA ROSS BERMANN ("BARBARA"), PETER ROSS ("PETER") and MICHAEL ROSS ("MICHAEL"). I purposely and with full affirmative intent do not leave MICHAEL ROSS, or any of his descendants, any bequest, inheritance, or provisions for anything under this Will. Notwithstanding anything to the contrary contained in this Will, the words "child", "children", "grandchild", "grandchildren" and "issue" shall not be deemed to include my son, MICHAEL ROSS, nor any of his descendants as it is my intention to not leave them anything under this Will. I have no deceased children and I have not remarried.

1.02   Any reference to a distribution "per stirpes" shall be construed in such manner as shall preserve, at the time of distribution, equality between or among those lines of descent having one or more then living members closest in relationship to the decedent and one or more deceased members who are survived by issue.





CFN 20100352035, OR BK 24087 PG 429, RECORDED 09/20/2010 10:02:02

EXHIBIT "A"

1.03   I constitute and appoint my longtime friend and attorney, THOMAS E. DURKIN, JR., to serve as my Executor.   If my friend, THOMAS E. DURKIN, JR. does not survive me or for any reason fails to qualify or continue as my Executor, I constitute and appoint my longtime friend and attorney, ELIZABETH M. DURKIN, to act in his place and stead. If ELIZABETH M. DURKIN does not survive me or for any reason fails to qualify or continue as my Executor, I constitute and appoint my longtime friend and accountant, HERBERT BRITTON, to act in her place and stead.

1.04   I nominate and appoint THOMAS E. DURKIN, JR. and HERBERT BRITTON, to serve as Co-Trustees of any and all trusts created under this Will. If THOMAS E. DURKIN, JR. shall die, resign or be unable to act as Trustee hereunder, I appoint ELIZABETH M. DURKIN to succeed THOMAS E. DURKIN, JR. If and when either HERBERT BRITTON or ELIZABETH M. DURKIN shall die, resign, or be unable to act as a Trustee, then the survivor of them shall continue to act as my Trustee. The last acting Trustee for whom no designated successor shall be available to act for any reason whatsoever may appoint any one or more individuals and/or any corporation qualified to act as Trustee in the State of Florida as his or her Co-Trustee or successor Trustee, without Court Approval.

1.05   Any reference to my "Executor", whether in the singular or plural, is intended to refer to such person or persons to whom Letters Testamentary are granted after my death. For convenience, I shall refer to such fiduciary as my "Executor", with the intention that any and all powers granted to such fiduciary shall be appurtenant to the fiduciary office.



2

## ARTICLE 2
## DEBTS AND EXPENSES.

2.01   I direct that all of my debts and funeral expenses be paid when legally required, or, in my Executor's sole and uncontrolled discretion, as soon as conveniently practicable after my death, except that any debt secured by a mortgage, pledge, or similar encumbrance on property owned by me at my death shall not be paid by my estate, but such property shall pass subject to such mortgage, pledge, or similar encumbrance.

## ARTICLE 3
## TANGIBLE PERSONAL PROPERTY.

3.01   I devise all of my clothing, jewelry, personal effects, furniture, furnishings, household effects, automobiles, boats and other tangible personal property (other than money), including insurance policies thereon, in accordance with a written list or memorandum which I may have executed and which is in existence at the time of my death.  In the event of any conflict between such memorandum and this Will, then as to such conflict the provisions of the last executed document shall prevail.  My Executor shall conclude no written memorandum or list exists if none is found within sixty (60) days after admission of this Will to probate.

3.02   If no memorandum or list is found, as indicated above, I direct that all my tangible personal property be divided equally between BARBARA and PETER per stirpes.  In the event that BARBARA and PETER cannot agree as to the division of said property, my Executor shall have absolute discretion to effectuate such equal division.

## ARTICLE 4
## PECUNIARY BEQUESTS.

4.01   I give the sum of TWO AND ONE HALF MILLION ($2,500,000.00) DOLLARS to my daughter, BARBARA, provided, however, that if she shall have predeceased me such sum shall be distributed to her issue per stirpes;



3

4.02   In the event that BARBARA shall predecease me, not survived by issue, the share of such child shall pass to the surviving child or child's issue, per stirpes;

4.03   I give the sum of TWO AND ONE HALF MILLION ($2,500,000.00) DOLLARS to my son, PETER, in trust upon the terms and conditions described in the succeeding paragraphs of Article 5 of this Will;

4.04   I give the sum of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS to DREW UNIVERSITY for educational purposes at the CENTER FOR HOLOCAUST/GENOCIDE STUDY, Embury Hall, Madison, New Jersey 07940;

4.05   I give the sum of THIRTY THOUSAND ($30,000.00) DOLLARS to BETH ISRAEL CONGREGATION, of 316 Park Avenue, Florence, South Carolina 29501 for general and unrestricted purposes;

4.06   I give the sum of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS to SAINT BARNABAS MEDICAL CENTER FOUNDATION, of 95 Old Short Hills Road, West Orange, New Jersey 07052 for the Eric and Lore Ross Patient Assistance Fund;

4.07   I give the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS to CONGREGATION AHAVAS SHOLOM, of 145 Broadway, Newark, New Jersey 07104, for general and unrestricted purposes;

4.08   I give the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS to ST. JOHN'S CHURCH, of 22 Mulberry Street, Newark, New Jersey 07102, for general and unrestricted purposes;

4.09   I give the sum of TWO HUNDRED AND FIFTY THOUSAND ($250,000.00) DOLLARS to BOYS TOWN JERUSALEM, FOUNDATION OF AMERICA, INC., of 1 Penn Plaza, Suite 6250, New York, New York 10019 for general and unrestricted purposes;



4

4.10   I give the sum of TWO HUNDRED AND FIFTY THOUSAND ($250,000.00) DOLLARS to NEW JERSEY YMHA-YWHA CAMPS, of 21 Plymouth Street, Fairfield, New Jersey 07004-1686, for scholarships and capital improvements in honor of PHILIP DRILL;

4.11   I give the sum of TWO HUNDRED AND FIFTY THOUSAND ($250,000.00) DOLLARS to THE HEBREW IMMIGRANT AID SOCIETY HEADQUARTERS a/k/a HIAS, 333 Seventh Avenue, New York, New York 10001-5004, for food and medical supplies to Jewish persons residing in Argentina and Russia;

4.12   I give the sum of TWO HUNDRED AND FIFTY THOUSAND ($250,000.00) DOLLARS to SOUTHERN POVERTY LAW CENTER, of 400 Washington Avenue, Montgomery, Alabama 36104, for educational and/or other legal purposes;

4.13   I give the sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS to UNITED JEWISH COMMUNITY OF METROWEST, of 901 Route 10, Whippany, New Jersey 07981-1156; for youth activities and educational purposes to be used at the discretion of Max Kleinman or his successor;

4.14   I give the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS to TEMPLE B'NAI ABRAHAM, of 300 East Northfield Road, Livingston, New Jersey 07039, for educational and teen-age youth activities; this distribution is in total satisfaction of any prior commitment;

4.15   I give the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS to HILLEL: THE FOUNDATION FOR JEWISH CAMPUS LIFE, 1640 Rhode Island Avenue, NW, Washington, DC 20036-3279, for student activities, building development and support at the new HILLEL Building at Rutgers University;



4.16   I give the sum of ONE MILLION ($1,000,000.00) DOLLARS to NEW JERSEY PERFORMING ARTS CENTER a/k/a NJPAC, of One Center Street, Newark, New Jersey 07102-4500, for its general endowment fund;

4.17   I give the sum of ONE MILLION ($1,000,000.00) DOLLARS to ST. BENEDICT'S PREPARATORY SCHOOL, of 520 Dr. Martin Luther King, Jr. Boulevard, Newark, New Jersey 07102-1314, for scholarship support of students in honor of the THOMAS E. DURKIN, JR. FAMILY to be used at the discretion of Father Edwin Leahy, Headmaster, or his successor.

## ARTICLE 5
## PETER'S TRUST:

5.01   With reference to Paragraph 4.03 of this Will, I direct my Trustees to distribute, annually, to my son, PETER, the sum of TWO HUNDRED FIFTY THOUSAND ($250,000.00) DOLLARS, payable on January 1st in each year for the duration of my son, PETER's lifetime. Such distribution shall first be made from income and only be made from principal in the event that the income is insufficient in any one year for the aforementioned distribution.

5.02   During PETER's lifetime, my Trustees may pay over to or for the benefit of PETER, such amounts from the principal of this Trust as, in the sole discretion of the Trustees, are appropriate for his health, maintenance and support.

5.03   Upon the death of my son, PETER, I direct my Trustees to distribute any undistributed, accumulated, and accrued income and principal to his issue per stripes.



CFN 20100352035 BOOK 24087 PAGE 434, 8 OF 17

# ARTICLE 6
# GST TRUSTS.

I give an amount equal to my then remaining Generation-Skipping Tax Exemption, in equal shares, to my grandchildren ("Grandchildren" or "Grandchild" shall mean only BARBARA's and PETER's children) who survive me subject to the following restrictions. The interest created herein shall be held by my Trustees as separate trusts for the benefit of each such Grandchild in accordance with the following terms and conditions:

6.01   My Trustees may distribute to each such Grandchild such amounts of the net income and/or the principal of his or her trust as my Trustees deem advisable to provide for such Grandchild's health, maintenance, support and education. In exercising such discretion, my Trustees shall be required to take into consideration such Grandchild's income and property, including any income which may be available to such Grandchild from any other source. My Trustees shall accumulate any undistributed net income and shall add that accumulated net income to the trust's principal at the end of each year.

6.02   After any Grandchild reaches the age of thirty-five (35) years, such Grandchild shall have the power to appoint such part or all of the balance of his or her trust to or for the benefit of that Grandchild's issue.

6.03   Upon my Grandchild's death, my Trustees shall distribute the balance, if any, of his or her trust to or for the benefit of my Grandchild's issue as my Grandchild may appoint in his or her Will.

6.04   Upon my Grandchild's death, my Trustees shall distribute the balance of his or her trust which my Grandchild has not validly appointed by his or her Will to my Grandchild's then living issue per stirpes, or if none of my Grandchild's issue is then living, such balance shall be distributed, to my then living issue, not including MICHAEL, or his descendants.



6.05   For purposes of this Article, the "Generation-Skipping Tax Exempt Amount" means the monetary amount equal to the amount of the generation-skipping tax exemption to which I am entitled under Section 2631(a) of the Internal Revenue Code and which has not been either (i) actually allocated during my lifetime in accordance with Section 2632(a) of the Internal Revenue Code or (ii) deemed allocated in accordance with Section 2632(b) of the Internal Revenue Code.

## ARTICLE 7
## RESIDUARY ESTATE

All the rest, residue and remainder of my estate of every kind and description (herein called my "residuary estate") I give, devise and bequeath to my Executor in accordance with the following subsections.

7.01   <u>Distribution to Charities</u>. My Executor shall distribute the residue of my estate to the charitable organizations set forth in Paragraph 7.02 herein, and which are qualifying under sections 170(c) and 2055(a) of the Code, in such amounts as I have indicated in said Paragraph. In the event any charity named in Paragraph 7.02 shall fail to qualify as a charitable organization, or is no longer in existence at the time of my death, then such moneys shall be distributed among the remaining charities in the proportions set forth in Paragraph 7.02.

7.02   <u>List of Charitable Organizations and the Sums Payable to Each</u>.

1.   TWENTY-FIVE (25%) PERCENT to AMERICAN ASSOCIATES, BEN-GURION UNIVERSITY OF THE NEGEV, of 1430 Broadway, 8th Floor, New York, New York 10018, for student scholarships covering tuition, room, board and books;

2.   TWENTY-FIVE (25%) PERCENT to U.S. HOLOCAUST MEMORIAL MUSEUM, Washington, DC, for its endowment fund;



8

3.  TWENTY-FIVE (25%) PERCENT to SOLOMON SCHECHTER DAY SCHOOL OF ESSEX AND UNION, WEST ORANGE UPPER CAMPUS, of 1418 Pleasant Valley Way West Orange New Jersey 07052 in honor of JOYCE RAYNOR for student support and the yearly "Neshama Israel Trip";

4.  TWENTY-FIVE (25%) PERCENT to SAINT BARNABAS MEDICAL CENTER FOUNDATION, of 95 Old Short Hills Road, West Orange, New Jersey 07052 for the expansion, maintenance and upkeep of the Eric and Lore Ross Lobby in honor of my personal friend HODA BLAU.

7.03 The indicated address of each charitable organization above shall not be determinative of the gift, in the event that such address changes.

## ARTICLE 8
## PAYMENT OF TAXES.

8.01 My Executor shall pay all estate taxes (including any interest and penalties thereon not caused by negligent delay) payable with respect to all property includable in my gross estate or taxable by reason of my death (except for (i) any tax imposed by Chapter 13 of the Internal Revenue Code, (ii) any additional estate tax imposed by Section 2032A of the Internal Revenue Code, (iii) any tax, if applicable, resulting from the inclusion of any property in my estate under Section 2044 of the Internal Revenue Code), whether or not such property is part of my probate estate and whether or not such taxes are payable by my estate or the recipient of any such property (including, in the discretion of my Executor, direct inheritance taxes that may be prepaid with respect to a contingent or remainder interest), out of the balance of my residuary estate.



## ARTICLE 9
## POWERS OF TRUSTEE; ADMINISTRATION OF TRUST.

9.01   In addition to and not in limitation of all powers, authorities, and discretions granted by common law, statute, or under any rule of court, I hereby expressly authorize and empower my Trustee in my Trustee's sole and absolute discretion:

(a) to invest, reinvest in, and retain, whether originally a part of my estate or subsequently acquired, such stocks, bonds, or other property, real or personal, including uninsured money market funds and options on securities, as my Trustee may consider advisable or proper; from time to time, without application to or the approval of any court and without being restricted as to the character of any investment by any statute or rule of law or court governing investments by fiduciaries;

(b) to sell, lease (without regard to the possible termination of the trust), improve, partition, mortgage, exchange, or otherwise deal with any and all property at any time forming a part of any trust as my Trustee may deem appropriate;

(c) to vote in person or by proxy with respect to any shares of stock or other securities held by my Trustee, for any purpose, and to take any other action which my Trustee may deem necessary or proper in connection therewith; and to hold investments in the name of a nominee;

(d) to make divisions or distributions of the assets of any trust in money or in kind, or partly in money and party in kind, and to allocate to any such trust property different in kind from that allocated in any other part. Except as otherwise herein specifically provided, the judgment and any determination of my Trustee in connection herewith, including any decision to make a non-*pro rata* distribution and any decision regarding the values assigned to various assets, shall be binding and conclusive on all persons interested herein;

(e) to retain any property (whether or not income producing) which I may own at the time of my death until such time as my Trustee may deem it desirable to dispose thereof;

(f) to borrow money for any purpose connected with the protection, preservation, or improvement of any trust, and in connection therewith to create one or more mortgages on, or pledges of, any part or all of the property included in such trust, whenever the same shall be deemed appropriate by my Trustee;



10

(g) to pay, compromise, modify, renew, adjust, submit to arbitration, release, or otherwise deal with any claims or demands of any trust against others or of others against such trust as my Trustee shall deem advisable, and to make any payments in connection therewith;

(h) to execute, acknowledge, and deliver any and all written instruments which my Trustee may deem advisable to carry out any of the foregoing powers, including the power to indicate any division or distribution of any trust by deeds or other writing or instruments recorded among the public records of any jurisdiction where any such property may be located. No party to any such instrument in writing signed by my Trustee shall be bound to see to the application by my Trustee of any money or other property paid or delivered to the Trustee pursuant to the terms of such instrument.

9.02   My Trustee, if not expressly required by the law of the State of Florida to do so, shall be excused from filing any account with any court; however, my Trustee may render an annual (or more frequent) account and may, at any other time, including at the time of the death, resignation, or removal of any Trustee, render an intermediate account of my Trustee's administration to such of the then current income beneficiaries and vested remaindermen who are of sound mind and not minors at the time of such accounting. The written approval of such accounting by all of such beneficiaries and remaindermen shall bind all persons then having or thereafter acquiring or claiming any interest in any trust, and shall be a complete discharge to my Trustee with respect to all matters set forth in the account as fully and to the same extent as though the account had been judicially settled in an action or proceeding in which all persons having, acquiring, or claiming any interest were duly made parties and were duly represented.

9.03   My Trustee shall at all times serve as such without bond.

9.04   Substitute or Successor Trustees hereunder shall have all the rights, powers, discretions, duties, and responsibilities, as well as the limitations thereof, granted to or imposed upon my Trustee herein named. Such Trustees shall not be liable for the acts of their



11

predecessors if, by the exercise of reasonable diligence, they do not discover such acts upon becoming an acting Trustee.

9.05    There shall be no apportionment of income upon the death of any beneficiary, and any undistributed income shall be treated by the Trustee as part of the principal of the particular trust.

9.06    In exercising any discretion conferred herein, my Trustee may, but shall not be required to, inquire into or investigate any other assets or resources available to any beneficiary of this Will.

9.07    All decisions made in good faith and with reasonable diligence by my Trustee shall be conclusive and binding on all persons having or acquiring any interest in any trust under this Will.

9.08    My Trustee shall be entitled to reasonable compensation for services rendered, pursuant to and in accordance with Florida Statutes Title XLII, Chapter 736.0708. Compensation paid to any Trustee pursuant to published fee schedules in effect from time to time shall be presumed to be reasonable.

### ARTICLE 10
### SPENDTHRIFT PROVISION.

10.01   To the extent permitted by law, no interest in any trust created under this Will, whether in income, in principal, or in both, shall be subject to anticipation, commutation, hypothecation, pledge, assignment, sale, transfer, or alienation in any manner; nor shall any beneficiary have the power to charge or encumber any such interest; nor shall any such interest be in any manner liable for or subject to the debts, contracts, liabilities, engagements, torts, obligations of any beneficiary, or claims against any beneficiary. This provision is intended to prevent both voluntary and involuntary alienation of trust income and principal.



CFN 20100352035 BOOK 24087 PAGE 440, 12 OF 17

## ARTICLE 11
## POWERS OF EXECUTOR AND
## ADMINISTRATIVE PROVISIONS.

11.01 For the purposes of this Article 11, the term "Personal Representative" shall include my Executor and my Trustee.

11.02 My Personal Representative shall serve without bond.

11.03 My Personal Representative shall have all powers conferred by Florida law and all powers granted to my Trustee in Article 9 of this Will.

11.04 My Personal Representative is authorized to execute on my behalf, or on behalf of my estate, any joint tax return which may be filed jointly with my spouse, or the Executor of my spouse.

11.05 My Personal Representative, to the extend permitted under Florida Law, shall have, in addition to any other powers, the specific powers to invest, reinvest, sell, mortgage or otherwise dispose of any part or all of my estate, without the necessity of obtaining prior or subsequent court approval.

11.06 Distributions may be made in cash or in kind (and if in kind, may be made non-*pro rata*) in the discretion of my Personal Representative.

11.07 In construing any provision of this Will with respect to any power, right, duty, or discretion granted to any fiduciary hereunder, I direct that the language used shall be interpreted in such manner as to fulfill my intention of obtaining the maximum federal estate tax marital deduction allowable to my estate.

11.08 Notwithstanding any provisions hereof, the trustees shall have the discretion (without the permission or order of any court) at any time to terminate any or all trusts created hereunder if, in the trustees' judgment, the value thereof is insufficient to warrant the costs and inconveniences of continued administration or if continued administration is otherwise

13

impractical. Upon such termination, the entire remaining balance remaining shall be distributed: to the current primary income beneficiary of such trust; or, if more than one person is a permissible current income beneficiary, in equal shares to all such income beneficiaries (whether or not then receiving income in equal shares). In making such judgment, the trustees need not consider the interests of other beneficiaries, and such other beneficiaries' interests in the trust shall cease upon such determination by the trustees. This power and discretion may not be exercised by any trustee who is a current income beneficiary of such trust or who has been appointed by or has a legal obligation to support any beneficiary.

## ARTICLE 12
## INTERPRETATION

12.01   If required by the context of this Will, singular language shall be construed as plural, plural language shall be construed as singular, and the gender of personal pronouns shall be construed as either masculine, feminine, or neuter.

12.02   All headings used in this Will to describe the contents of each article, paragraph, or other division are provided for convenience only and shall not be construed to be a part of this Will.

12.03   This Will shall be construed in accordance with the laws of the State of Florida.

## ARTICLE 13
## MISCELLANEOUS

13.01   It is my wish and desire that the Executor or Executors and the Trustee or Trustees who I have appointed herein retain **HERBERT BRITTON**, my trusted Accountant and friend for many years, to perform the accounting and related services which may be required in administering my estate or the trusts created herein.



CFN 20100352035 BOOK 24067 PAGE 442, 14 OF 17

13.02 **No-Contest Provision.** Not withstanding any and all of the other provisions of this Will, if any beneficiary shall object to the probate of my Will, or in any manner, directly or indirectly, contest or aid in contesting my Will, or any of the provisions of my Will, or any distribution under my Will of any part of my estate, then he or she shall be deemed to have predeceased me for the purposes of this Will, and any and all provisions herein contained for his or her benefit shall be void and of no effect and the benefits that such beneficiary would have received if he or she had made no such contest or brought no such proceedings shall go to the residuary beneficiaries of this Will (other than such beneficiary) in the same proportion as the other property received under the residuary clause of this Will. If all of the residuary beneficiaries join in such contest or proceedings, then such benefits shall go to the persons (other than the persons making such contest or joining such proceedings) who are nearest related to me by blood. Each benefit, or bequest or devise conferred by this Will is made on the condition precedent that the beneficiary shall accept and agree to all of the provisions of this Will and the provisions of this Item are an essential part of each and every such benefit, or bequest or devise.

**IN WITNESS WHEREOF,** I have signed my name to this Last Will and Testament this 13th day of August, 2009.

*[signature]*
ERIC F. ROSS

SIGNED, SEALED, PUBLISHED and DECLARED by the above named Testator, as and for his Last Will and Testament, in our presence, who in his presence and in the presence of each other (all being present at the same time), thereupon subscribed our names hereto as witnesses at his request. This Will, consisting of 17 typewritten pages, including the following page, each page having been initialed by Eric F. Ross on its margin, was signed, sealed, published and declared by Eric F. Ross as his Last Will, in the presence of us, who were present at the same time and who then, at his request, in his presence and in the presence of each other, have signed our names as attesting witnesses.

_____  Address:   45 Cedars Road
Robert S. Cosgrove                          Caldwell, New Jersey 07006

_____  Address:   45 Bull Pine Road
Gregory F. Kotchick                         East Stroudsburg, PA 18301

_____  Address:   9 Hamburg Turnpike
Laura McCue                                 Butler, New Jersey 07405

STATE OF NEW JERSEY :
                                    SS:
COUNTY OF ESSEX     :

    I, Eric F. Ross, declare the officer taking my acknowledgment of this instrument, and to the subscribing witnesses, that I sign this instrument as my Will.

_____
ERIC F. ROSS

    We, **Robert S. Cosgrove, Gregory F. Kotchick** and **Laura McCue**, having been sworn by the officer signing the Will, and declare to that officer on our oaths that the Testator declared the instrument to be the Testator's Will and signed it in our presence and that we signed the instrument as witness in the presence of the Testator and of each other.

_____
Robert S. Cosgrove

_____
Gregory F. Kotchick

_____
Laura McCue

    Acknowledged and subscribed before me by the Testator, Eric F. Ross, who is personally to me and sworn to and subscribed before me by the witnesses, Robert S. Cosgrove, who is personally known to me, Gregory F. Kotchick, who is personally known to me and Laura McCue, who is personally known to me and subscribed by me in the presence of the Testator and the subscribing witnesses, all on August 13, 2009.

_____
Notary Public

MATTHEW E. McGOEY
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/16/2014

17